[No. 8818.    Department One.    July 22, 1910.]

GORMAN & COMPANY, *Appellant*, v. W. M. ANDREWS *et al.*,
*Respondents.*[1]

FISH—LICENSES—LOCATIONS—ABANDONMENT — FISHING SEASON—
STATUTES—CONSTRUCTION.  Under the general act, applying to all the
waters of the state, providing that a salmon fishing license for one
year from April 1 shall be deemed abandoned if, during the "fishing
season" covered by the license, the locator fails to construct his ap-
pliances, the term "fishing season" applies only to waters where
there is a regular fishing season, as on the Columbia river, and lo-
cations in Puget Sound are not abandoned upon failure to construct
appliances during the summer and fall runs, since salmon abound
in Puget Sound at all times of the year, and there is no distinct
fishing season within the meaning of the act; and an involuntary
abandonment could not be worked during the life of the license.
(FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for San
Juan county, Joiner, J., entered January 17, 1910, upon find-
ings in favor of the defendants, in an action to enjoin the use
of a fish trap location, after a trial on the merits before the
court.    Reversed.

*Kerr & McCord* and *Dorr & Hadley*, for appellant.

*A. W. Buddress*, for respondents.

CHADWICK, J.—Plaintiff is the successor in interest of the
Washington Packing Company, the original locator of a trap
site for fishing in San Juan county.  The Washington Pack-
ing Company fished the ground for the years 1906 and 1907,
but although its license was renewed on April 1, 1908, it made
no improvements, nor did it fish the ground during that year.
On December 26, 1908, the Washington Company sold its
possessory rights and assigned its license to plaintiff, which
caused a resurvey of the premises to be made and refiled a
location map made from the actual survey.   On April 1,
1909, plaintiff's annual pound net fishing license was renewed

[1]Reported in 109 Pac. 1033.

by the fish commissioner of the state. Some time in December, 1908, defendant W. M. Andrews located the ground formerly occupied by the Washington Packing Company, as a fish trap site, taking out a license therefor which, by its terms and under the statute, would expire on the 31st day of March, 1909. This license was renewed April 1, 1909. In so far as surveys and filing maps are concerned, we believe that the defendant Andrews sufficiently complied with the law, although his acts in that regard are challenged by plaintiff. It will thus be seen that there are two locations and two licenses out for the same ground.

On March 28, defendant Sims, the lessee of defendant Andrews, commenced the construction of a fish trap on the disputed ground, and before the first day of May, 1909, had constructed a pound net fish trap at considerable expense. During the month of June, 1909, plaintiff constructed a pound net or fish trap on the disputed ground, and occupied the same during the balance of the fishing season. This action was begun by plaintiff to enjoin defendants from continuing their operations in the way of fishing or constructing or maintaining any fishing appliances or traps upon the disputed ground, and for general relief. The court found that the Washington Packing Company had abandoned the ground and its rights therein by reason of nonuser during the "fishing season" of the year 1908, and that it had no transferable interest, and that the appliances of plaintiff constituted an unlawful obstruction of defendants' rights in the disputed grounds; and enjoined plaintiff from "in any manner maintaining or operating a fish trap on said fishing location." From this decree, plaintiff has appealed.

The court found "that during all the times herein mentioned the said fishing location has been valuable for only spring, summer and fall fishing of salmon, being from about the 1st day of May to the 1st day of November of each year, and that the fishing season for said location would end on or about the 1st day of November of each year." It is the con-

tention of the respondent, and was the view of the trial judge, that the license issuing under the law on April 1 in each year did not carry any right in the fishing location over the actual fishing season, or the two marked runs of salmon, called by the court summer and fall fishing; that the season thus ending on November 1 each year, appellant had no rights in the ground, because of the failure of its assignor to erect its appliances during the summer and fall of 1908. On the other hand, appellant contends that the Puget Sound fishing season and license year are synonymous, and that an involuntary abandonment could not be worked within the term of the license.

The two questions upon which the rights of the parties must depend, that is, the meaning of the term "fishing season" as applied to the waters of Puget Sound, and the duration of a licensee's rights, have been met by former decisions of this court. In *State ex rel. Curry v. Crawford*, 14 Wash. 373, 44 Pac. 876, it was contended that the fishing season is confined to certain months in the year. The court said:

"It is conceded that as to the Columbia river there is a fishing season as contended for by the respondent, but not so as to Puget Sound, and it is a well-known fact that salmon abound there at all seasons of the year, and fishing for them is not confined to any particular time."

In *Legoe v. Chicago Fishing Co.*, 24 Wash. 175, 64 Pac. 141, the fishing acts, Laws 1893, p. 15, and Laws 1897, p. 214, were under consideration. After saying that the evident intention of the legislature in passing the acts in question was to grant to the license holder an exclusive right to the particular ground where he constructed, or indicated his intention to construct, the fixed appliances authorized for a limited time, extending at most not longer than the date of the expiration of the license, the court said:

"The act was general, and applied to all the public waters over which the state had jurisdiction. In some of these waters at least, if not in all of them, there is a regular fish-

ing season, confined to certain months of the year, which, while varying slightly with the different years, recurs with substantial regularity. The license authorized by the act ran for one year. It was issued at and bore date from the time application was made for it, regardless of the actual fishing season. It would seem from this that the legislature intended by the clause of the statute in question to fix the end of the actual fishing season, instead of the date of the expiration of the license, as the limit of time for which an indicated location could be held without the construction of a fishing appliance."

It is upon this case that counsel for respondent principally relies, and it no doubt moved the trial court to enter the decree that he did. Since the rendition of the decree in the *Legoe* case, the exact question has been before this court, and it has been held that no rights accrued to a locator who had made a location in the waters of Puget Sound in January, 1909, the ground being at the time under a license to another expiring March 31, 1909, neither party having made any improvements during the summer and fall runs, as was the case here. *Muller v. Apex Fishing Co.*, 57 Wash. 140, 106 Pac. 625. By the terms of section 2 of the act of 1905, Laws 1905, p. 255 (Rem. & Bal. Code, § 5214), the original licensee or its transferee had the right to renew its license. This being done in this case, it follows that the case should be reversed, with instructions to the trial court to enter a decree in favor of appellant. The last legislature, chapter 77, section 3, Laws of 1909, page 146 (Rem. & Bal. Code, § 5212), provided:

"If the locator or owner of a fishing location for pound nets or fish traps in the waters of Puget Sound fails to construct his fishing appliances thereon at least one time during a period of four years, his location shall be deemed abandoned, even though he shall during said period comply with the requirements of the laws of the state of Washington pertaining to fishing locations in other respects. Any statute of the state of Washington inconsistent with the provisions of this section is hereby repealed."

It is likely, although it is not necessary to so decide, that this statute saves the rights of appellant, irrespective of the reasons hereinbefore assigned.

RUDKIN, C. J., GOSE, and MORRIS, JJ., concur.

FULLERTON, J., dissents.