[No. 24907.   En Banc.   October 17, 1934.]

WILLIAM LAMPA, *Respondent*, v. CHAS. E. GRAHAM,
*Appellant*.[1]

*Fred M. Bond,* for appellant.
*Welsh & Welsh,* for respondent.

TOLMAN, J.—By this action, the plaintiff sought an
injunction restraining the defendant from constructing
and maintaining a lead or wing which his complaint
alleges , would extend an already located and con-
structed fish trap an unlawful distance into the stream
and which would impede navigation.

As to the plaintiff's special interest or special rights,
the complaint alleges:

"That if the defendant is permitted to construct said
wing as hereinabove set out it will be impossible for
plaintiff to use said channel in going to and from his
work and will endanger the life and property of plain-
tiff for the reason that if said wing is so constructed
at certain stages of the tide it will be impossible to
navigate said channel without his boat being cast upon
Sand Island to the east and south of defendant's trap.

"That there are approximately 50 others holding
gill net licenses issued by the director of licenses of

[1]Reported in 36 P. (2d) 543.

the state of Washington and from 10 to 15 others holding troller's licenses issued by the director of licenses of the state of Washington, all of whom must of necessity use said channel in the same manner as plaintiff must use the same and if defendant is permitted to construct said wing it will endanger the life and property of each and all of said persons. . . .

"That the plaintiff and other gill netters have in the past drifted in the channel above and below the defendant's trap for the purpose of catching fish and if the defendant is permitted to construct said wing they will be absolutely prevented from doing so and deprived of their right of fishing in the water of the Columbia River at the location of defendant's trap."

After trial on the merits, a final decree was entered permanently enjoining the defendant from building the proposed extension to his fish trap, and from that decree the defendant has appealed.

The first, most important, and, we think, the controlling question, is as to the right of the plaintiff to maintain this action.

"A private person may maintain a civil action for a public nuisance, if it is specially injurious to himself, but not otherwise." Rem. Rev. Stat., § 9921 [P. C. § 9131-75].

This, we think, is the generally accepted rule even in those jurisdictions where there is no statute upon the subject. While the rule is well settled and plain, its application is not without difficulties.

We have had occasion to discuss this subject in several cases, and we will shortly refer to such of them as seem to have a bearing upon the instant case.

Before we analyze these cases, we may say, in a word, that the evidence offered upon the trial below wholly fails to sustain the allegation of the complaint that respondent was or expected to be engaged in fishing in the vicinity of the trap in question, or that the

proposed extension to the trap would affect his actual fishing activities in any particular. There is ample evidence to indicate that respondent and others used the channel where this fish trap is located solely as a highway in passing to and from their daily labors in waters not affected in any degree by appellant's fish trap.

Perhaps, this particular channel is the most direct and convenient way from Ilwaco and vicinity, where the respondent and those engaged in like activities live, to the fishing grounds which are entirely below and beyond Sand Island and beyond where this channel rejoins the main stream, but it is not the only navigable way. One or more other courses are open to respondent's use, which courses are necessarily used by all water-borne traffic in and out of Ilwaco, except these small fishermen's boats drawing not more than three or four feet of water, and perhaps an occasional boat of similar light draft.

Under these conditions, can it be said that respondent, and those similarly situated, suffer an injury peculiar to themselves and different from that sustained by the public generally? We think not.

In *Jones v. St. Paul, Minneapolis & Manitoba Ry. Co.*, 16 Wash. 25, 47 Pac. 226, it was held that the obstructing of navigation so that the owner of a steamboat operating on the river was compelled to tie up his boat for a period of twelve days was not a special damage for which the boat owner could recover, and that he suffered only the same damage as that suffered by the general public.

Where the nuisance complained of is the obstruction of a public highway, the sort of special injury which will enable a private individual to maintain an action is well illustrated by what is said in *Anderson*

*v. Nichols,* 152 Wash. 315, 278 Pac. 161, from which we quote:

"It is objected that the respondents suffered no injury from the obstruction in the street differing in kind from that of the public generally, and hence cannot maintain the present action. But we are clear that all of the respondents suffer an injury, different in kind from that suffered by the general public. Some of them own abutting property directly across the street from the place of the structure, others own property diagonally across it, and still others own property on the same side of the street the structure is on and northerly from it. All of the property is between the cross-streets that the structure is between, and all not only suffer the inconvenience that the general public suffers, but suffer the added inconvenience of being denied the same free access to their property that they formerly enjoyed."

So, also, in *State ex rel. Vandervort v. Grant,* 156 Wash. 96, 286 Pac. 63, we held that one not an abutting property owner could not maintain an action to abate a nuisance consisting of the obstruction of sidewalks on a public street.

The cases upon which respondent relies are all clearly distinguishable. They are typified by the case of *Morris v. Graham,* 16 Wash. 343, 47 Pac. 752, 58 Am. St. 33, where it was held that one excluded from a common fishing ground, where he had theretofore carried on his occupation, suffered an injury different from and not common to the general public. It does not seem necessary to cite or discuss all of these cases and point out the distinguishing feature of each in detail.

Here, we see only the use of the channel of the river as a highway, as it is or as it may be used by the general public, and respondent must look to the public authorities to abate the nuisance, if any exists.

The judgment appealed from is reversed, with directions to dismiss the action.

MAIN, MITCHELL, MILLARD, STEINERT, and BLAKE, JJ., concur.

BEALS, C. J., dissents.

HOLCOMB, J. (dissenting)—I dissent. There is no distinction between this case and that of *Morris v. Graham,* 16 Wash. 343, 47 Pac. 752, 58 Am. St. 33; nor in the principles applied in *Anderson v. Nichols,* referred to in the majority opinion.

In this case, as in the *Morris* case, the action was instituted and a decree rendered in behalf of a class as to which the injury complained of is not common to the general public, but peculiarly affects respondent and the class to which he belongs. The acts complained of and enjoined by the trial court constitute a damage and special injury to them in which the general public does not and cannot share. The fact that others would suffer in the same way, if they were similarly engaged, constitutes no bar to the maintenance of the present action. It has always been held in this and every court of last resort of any repute that every individual who receives actual damage from a nuisance may maintain a private suit for his own injury, although there may be many others in the same situation.

Respondent and those similarly situated for whom he is suing are denied the benefits of Rem. Rev. Stat., § 9921 [P. C. § 9131-75], quoted in the prevailing opinion.

The judgment should be affirmed.

GERAGHTY, J., concurs with HOLCOMB, J.